**UNITED STATES**

v.

**Phillip C. RIOFREDO, 355 72 4333, Lance Corporal (E–3), U.S. Marine Corps.**

**No. NMCM 89 3392.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 6 June 1989.

Decided 11 May 1990.

LCDR Donna M. Crisalli, JAGC, USN, Appellate Defense Counsel.

Maj. Laura L. Scudder, USMC, Appellate Government Counsel.

Before BYRNE, FREYER and STRICKLAND, JJ.

STRICKLAND, Judge:

Contrary to his pleas, appellant was found guilty of an unauthorized absence of nearly 8½ months in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. He was sentenced to a bad-conduct discharge, confinement for a period of 75 days, forfeiture of $200.00 pay per month for 3 months and reduction to pay grade E–1. The military judge recommended that the bad-conduct discharge and reduction below pay grade E–2 be suspended for a period of one year from the date of the convening authority's action. The convening authority approved the adjudged sentence and suspended reduction below E–2 and the bad-conduct discharge in accordance with the military judge's recommendation. Subsequently, proceedings were held in accordance with Rule for Courts–Martial (R.C.M.) 1109, and the sus-

pended portions of the sentence were vacated.

Appellant asserted, both at trial and on appeal, that his absence was the result of duress. The duress defense was raised as a result of two confrontations between appellant and his staff noncommissioned officer-in-charge. Apparently, a less than amicable relationship existed between the two leading up to the first confrontation, which appellant described as follows:

Q. Did you ever have any physical altercations with Staff Sergeant Lowery?

A. Yes, I did, sir.

Q. How many times?

A. Twice, sir.

Q. Approximately when was the first one in relation to 22 June?

A. Approximately three weeks before, sir.

Q. And what happened?

A. I was physically struck by Staff Sergeant Lowery and thrown across a desk, and up against a wall, sir.

Q. And where did this happen?

A. In the back room of the chow hall, sir.

Q. And was it during the working day or—when did this happen?

A. It was towards the end of our working shift, sir.

Q. Were you alone in the room with Staff Sergeant Lowery?

A. Yes, sir.

Following this altercation, appellant reported the incident to his chain of command, up through and including the Battalion Sergeant Major. The command responded by formally counseling Staff Sergeant Lowery and placing a page 11 counseling entry in his service record book.

Subsequently, a second confrontation occurred off-base between appellant and Staff Sergeant Lowery. This occurred on 22 June 1988, the same day appellant is alleged to have commenced his unauthorized absence. This confrontation and its aftermath are recounted by appellant in this colloquy:

Q. And what happened that day?

A. I was sitting on my motorcycle in the parking lot of Rocking H Video out in town. Staff Sergeant Lowery ran into me there. He pulled me off my motorcycle and threw me on the ground. When I picked myself up off the ground I was struck on the left side of my face, which resulted in having a tooth of mine—my back tooth broken.

Q. Were you scared of Staff Sergeant Lowery?

A. Yes, sir.

Q. What did—were you supposed to go to work that day?

A. Yes, sir.

Q. And why didn't you go to work that day?

A. I felt threatened and I was scared of Staff Sergeant Lowery, sir.

Q. What did you do?

A. I packed my bags and I left, sir.

\* \* \* \*

Q. Why didn't you—the second altercation with Staff Sergeant Lowery, why didn't you report that to somebody? Why did you leave?

A. In my opinion, sir, I felt that it was obvious that nothing was being done. I felt further threatened by Staff Sergeant Lowery for trying to cause more trouble.

Evidence was also presented that Staff Sergeant Lowery was significantly larger in stature than was appellant and that Lowery lifted weights. Further evidence indicated that Lowery had recently reported to the command and appellant believed he would remain indefinitely.

■ Appellant contends that he had a reasonably grounded fear of serious bodily harm, that his attempts to resolve the matter with his chain of command had not prevented his injury in the second attack, and that he, therefore, could not avoid the absence without subjecting himself to this threatened danger. The Government asserts that there was no threat of immediate death or serious bodily harm as contemplated by R.C.M. 916(h), arguing that "[a]ppellant's situation in no way approaches the life-threatening experience contemplated in R.C.M. 916(h)," and that

appellant could have avoided his absence by reporting the matter to his chain of command.

We reject the Government's argument that the harm threatened in this instance is not of the magnitude contemplated in R.C.M. 916(h). The threat of serious injury is sufficient to raise the duress defense, and the threat of a beating, *United States v. Roby*, 23 U.S.C.M.A. 295, 49 C.M.R. 544 (1975), and of an initiation, *United States v. Roberts*, 14 M.J. 671 (NMCMR 1982), has been held to be justification for a reasonably grounded fear of receipt of serious bodily injury. Serious injury had already been inflicted on appellant, particularly in the second assault, which caused one of appellant's teeth to be broken.

█ The question in this case is not whether appellant had a reasonably grounded fear of serious bodily harm, but whether appellant could have avoided commencing his unauthorized absence without subjecting himself to a further assault. Appellant argues that he could not have avoided this absence because reporting the first assault to his chain of command did not prevent the occurrence of the second assault, citing *Roberts*. This case is distinguishable, however, because in *Roberts* the threat of serious bodily harm had been reported to the chain of command and no action was taken. In this instance, the command took positive action following appellant's report of the first assault. The action taken was not merely a perfunctory one, but rather was a formal counseling which resulted in an adverse entry in the service record book of his assailant, a Staff Sergeant. Such an entry has a lasting impact on the record of a staff noncommissioned officer.[1]

The real issue in this case is not whether command action prevented the second assault, but whether appellant could have reasonably expected that the command would have taken action after the second assault which would have precluded the occurrence of further assaults. If there was such a reasonable expectation, appellant was obligated to inform his command instead of initiating self-help measures. The Court of Military Appeals has stated: "The immediacy element of the defense is designed to encourage individuals promptly to report threats rather than breaking the law themselves." *United States v. Jemmings*, 1 M.J. 414 (C.M.A.1976), citing *People v. Otis*, 174 Cal.App.2d 119, 344 P.2d 342 (1959). Where one has a reasonable opportunity to avoid committing an offense without subjecting himself to the threatened harm, the defense of duress does not apply. R.C.M. 916(h).

We believe that the testimony of record indicates that there was a reasonable expectation that the chain of command would have taken further action against Staff Sergeant Lowery had appellant reported the second assault and that the action taken would have precluded the occurrence of additional assaults. Given the strong command response to the first assault, we are convinced the command's response to the second assault would have been even stronger and that affirmative steps would have been taken to bring a halt to this matter.[2] Instead of packing his bags and leaving, appellant could have immediately returned to base, sought whatever medical assistance he needed and promptly made the command aware of the situation.[3]

---

1. A counseling entry by a commander or his designated representative is considered adverse matter reflecting unfavorably upon a Marine's mental, moral, or professional qualifications and this material is microfiched and placed in the Marine's official military personnel file (OMPH) at Headquarters Marine Corps in addition to being entered in the Marine's field service record book. *See* Paragraph 1000, Marine Corps Individual Records Administration Manual (IRAM), MCO P1070.12, 22 February 1990.

2. This could have been accomplished in a number of ways, such as placing Staff Sergeant Lowery on restriction pending disciplinary action or by removing appellant or Staff Sergeant Lowery from duties in the chow hall. We note that the initial command action did prevent a second assault from occurring on base since the second altercation occurred out in town.

3. Appellant could also have reported the second assault to the local law enforcement agencies since this assault occurred off-base. Given the injury inflicted upon appellant, it is likely that charges would have been brought against Staff Sergeant Lowery which would have deterred him from similar conduct off-base in the future.

Such prudent action would have ensured that appellant not be required to go to work with Staff Sergeant Lowery later that day and would have enabled appropriate measures to be instituted by the command. Appellant's actions were not excusable where he had an opportunity to avoid his absence by seeking the assistance of his command. *See United States v. Campfield,* 17 M.J. 715 (NMCMR 1983). Under all of the facts and circumstances of this case we are convinced beyond a reasonable doubt that the duress defense did not exist.

▆ Appellant additionally argues that his sentence to a bad-conduct discharge was inappropriately severe for the offense committed given the extenuating circumstances motivating his absence, together with evidence of his rehabilitative potential as attested to by his superiors. We have weighed these matters against appellant's record, which includes evidence of two prior nonjudicial punishments and counseling entries relating to deficient performance, testimony concerning his lack of rehabilitative potential, and the lengthy absence of which appellant was convicted, and are convinced that a bad-conduct discharge is appropriate under all of the facts and circumstances of this case.

We have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings and the sentence are affirmed.

Chief Judge BYRNE and Judge FREYER concur.